# In the United States Court of Federal Claims

No. 17-422
(Filed:  February 19, 2020)
(Corrected: February 20, 2020)

---

| | |
|---|---|
| **COASTAL PARK LLC and** | |
| **MEYER LANDAU** | **Plaintiffs,** |
| | |
| **v.** | |
| | |
| **THE UNITED STATES OF AMERICA** | **Defendant.** |

---

*Alexander Novak*, Novak Juhase & Stern LLP, Cedarhurst, NY, for the Plaintiffs.

*Stephen C. Tosini*, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirshman, Jr.,* U.S. Department of Justice, Director, Civil Division, *Deborah A. Bynum,* U.S. Department of Justice, Assistant Director*,* Civil Division, Washington D.C., for Defendant.

**Keywords:** RCFC Rule 56, summary judgment, contract, breach of contract, anticipatory repudiation, time is of the essence, default, General Services Administration, *Coastal Park LLC v. United States*, 143 Fed. Cl. 289, 297 (2019).

## <u>MEMORANDUM OPINION AND ORDER</u>

**TAPP,** Judge.

This case is submitted to the Court on the parties' cross-motions for summary judgment. Plaintiffs Meyer Landau and Coastal Park, LLC (collectively "Coastal Park" or "Coastal") filed their Motion on December 10, 2019. (Pl. Mot. for Summ. J., ECF No. 33 ("Pl. Mot.")). The United States filed its Response and Cross-Motion on January 7, 2020. (Def. Cross-Mot. for Summ. J., ECF No. 36 ("Def. Mot.")). On January 23, 2020, Coastal filed its Reply and Response. (Pl. Resp., ECF No. 42). The United States filed its reply on February 5, 2020. (Def. Reply, ECF No. 45).

Plaintiffs brought this action to resolve a contractual dispute regarding the sale of Coast Guard property. The Court previously dismissed three counts of Coastal's Amended Complaint "to the extent those Counts assert a claim for damages that exceeds [$310,000]." *Coastal Park LLC v. United States*, 143 Fed. Cl. 289, 297 (2019). In moving for summary judgment, Coastal now seeks a return of its $310,000 deposit, while the United States seeks to retain the same as damages for breach of the sale contract.

The matter is now fully briefed and ripe for decision. For the reasons set forth below, the Court **GRANTS** summary judgment in favor of the United States and **DENIES** Plaintiffs' motion.

## I.    Background

The background of this dispute is succinctly summarized below, but additional material facts will be set forth in the following analysis.

### a.   *The Invitation for Bids*

Opening September 8, 2016, the General Services Administration ("GSA") issued an Invitation for Bids for the sale of a Coast Guard housing complex in Elizabeth City, North Carolina. (Def. Mot. to Dis. Appx. at 1–36, ECF 10-1 ("IFB")). The 32.42-acre housing complex included 72 three- and four-bedroom housing units, basketball and tennis courts, a children's playground, and a large gazebo. (*Id*.).

Pursuant to the IFB, Coastal was required to make an initial deposit of $100,000 and, within ten days of acceptance, plus-up the total "Earnest Money" deposit to ten percent ($310,000) of the purchase price. (*Id*. at Appx15, Appx19). The IFB set the closing date forty-five days after acceptance of the bid—October 23, 2016. (*Id*. at Appx13). The balance of the purchase price ($2,790,000) was due in cash on the closing date. (*Id*.).

The GSA "reserve[d] the right to extend the closing date for a reasonable amount of time." (*Id*.). Extensions were to be granted solely at the GSA's discretion. (*See id*. ("The Government reserves the right to refuse [Coastal Park's] request for extension of closing.")). All extensions were required to be approved by the GSA in writing. (*Id*. at Appx13). In exercising its option to grant an extension, the GSA was permitted to impose additional terms and conditions. (*Id*. at Appx13–14). Default or failure by Coastal Park to consummate the sale triggered the GSA's right to retain all deposits as damages for breach of contract. (*Id*. at Appx11–12).

### b.   *Coastal Park's Performance Under the Contract*

On September 8, 2016, the GSA accepted Coastal Park's $3,100,000[1] bid for the Coast Guard property. (IFB at Appx1–36). Coastal made deposits of both the initial $100,000 and $210,000 to bring its Earnest Money balance to $310,000. (Pl. Mot. Ex. 11, ECF No. 33-11). On October 8, 2016, Hurricane Matthew made landfall near North Carolina. (Am. Compl. at ¶¶ 10–11, ECF No. 7; Def. Mot. at 2). Due to concerns arising from Hurricane Matthew's landfall, Coastal requested—and GSA granted—an extension of the closing date from October 23 to October 30, 2016. (Am. Compl. at ¶ 13; Pl. Mot. Ex. 8, ECF No. 33-8). At that time, the GSA offered to extend the closing to November 14, 2016 provided Coastal deposited an additional

---

[1] Coastal submitted a bid of $3,100,000.01 which was accepted by GSA at $3,100,000. (IFB at Appx32, Appx34). No explanation has been provided for this discrepancy.

$310,000 towards the purchase price. (Pl. Mot. Ex. 8). At Coastal's request, due to further delays associated with Hurricane Matthew, GSA extended the closing deadline an additional day to Monday, October 31, 2016. (Am. Compl. at ¶ 14; Pl. Mot. Ex. 11, ECF No. 33-11).

On October 31, the GSA granted another extension at Coastal's request until November 7, 2016 to allow Coastal to inspect the property for hurricane damage. (Am. Compl. at ¶ 15; Pl. Mot. Ex. 9, ECF No. 33-9). The purpose of the extension was to allow Coastal to "monetize" any damage it contended was attributable to the hurricane. (Pl. Mot. Ex. 16, ECF No. 33-16). On November 2, 2016, Coastal hired Lookout Inspections and Albemarle Home Inspections to assess any damage caused by Hurricane Matthew. (Am. Compl. at ¶ 17). Coastal forwarded those inspection reports to the GSA on November 6, 2016. (*Id.*). The reports declined to specifically attribute any damage to the hurricane or "monetize" damage that allegedly occurred after acceptance of the bid. (See Pl. Mot. Ex. 10 at p. 17 ("Condition prior to [Nov. 3] unknown"), p. 20 ("determining when the damage occurred or the extent of the damage is beyond the scope of the inspection")).

On November 7, the closing date, the GSA demanded full payment of the balance owed ($2,790,000) by 11:00 AM EST on November 9, 2016. (Am. Compl. at ¶ 18). GSA warned Coastal that absent full payment, Coastal would be in default and thereby forfeit $310,000 in Earnest Money deposited to date. (Am. Compl. at ¶ 18; Pl. Mot Ex. 12, ECF No. 33-12). On November 8 Coastal responded, through counsel, rejecting the GSA's November 7 notice to cure. (Pl. Mot. Ex. 16, ECF No. 33-16). Coastal did not tender full payment and on November 10, 2016, the GSA declared that Coastal was in breach, the contract was voided, and its deposit forfeited. (Am. Compl. at ¶ 19; Pl. Mot. Ex. 11). On December 15, 2016, the GSA sold the property to another bidder. (Am. Compl. at ¶ 36).

On March 24, 2017, Coastal and Landau filed suit in this Court seeking, *inter alia*, return of the $310,000 down payment. (Compl., ECF No. 1).

## II.    Standard of Review

Under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine dispute" exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those which might significantly alter the outcome of the case; factual disputes which are not outcome-determinative will not preclude summary judgment. *Id*. The moving party bears the initial burden of proof, but this burden may be discharged by showing the absence of evidence supporting the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether summary judgment is appropriate, the court should not weigh the credibility of the evidence, but simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. When both parties move for summary judgment, "the court must

evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Id.* "To the extent there is a genuine issue of material fact, both motions must be denied." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 969 (Fed. Cir. 2009).

Contract interpretation "begin[s] with the plain language" of the agreement. *McAbee Const. Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). "Where contract provisions are clear and unambiguous, they must be given their plain and ordinary meaning." *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993).

### III.   Analysis

The parties have filed cross-motions for summary judgment on the sole issue of whether the United States was entitled to retain Coastal's $310,000 deposit. The IFB makes clear that the United States was entitled to retain Coastal's deposit if Coastal defaulted or otherwise failed to consummate the sale on the closing date. (IFB at Appx11–12). At the heart of this issue is whether Coastal Park defaulted by failing to tender payment in full by November 9, or the United States defaulted by cancelling the contract on November 10.

Coastal argues that the United States repudiated the contract on November 10, 2016 by declaring Coastal to be in default and cancelling the contract. (Pl. Mot. at 4, 7, 8). Coastal submits that, because the closing date was set for November 7, any declaration of default prior to 12:00 AM on November 8 was premature. (*See id.* at 7). Coastal contends it was therefore entitled to reject this declaration of default as void. (*Id.* at 8). Consequently, the United States' demand that Coastal tender payment in full by 11:00 AM on November 9 was also invalid and thus its November 10 default declaration was a breach of contract. (*Id.*).

Further, Coastal argues that even if it were unable to close on November 7, the contract provided for a daily penalty in liquidated damages. (*Id.* at 9). Therefore, the United States' remedy for Coastal's failure to close on November 7 was imposition of this daily penalty, rather than retention of the deposit. (*Id.*).

The United States counters that Coastal had demonstrated inability to obtain financing within the contractual deadline and demanded an unsupported reduction to its bid price, conduct which caused delays ultimately amounting to breach of the contractual closing deadlines. (Def. Mot. at 10). Consequently, retention of the deposit and resale of the property were reasonable steps to mitigate damages caused by Coastal's default. (*Id.* at 14). In short, the United States argues that Coastal's failure to tender payment in full by 11:00 AM on November 9 amounted to a default triggering GSA's right to terminate the contract and retain the deposit.

### a. *Failure to tender payment on November 9, 2016 was a breach of the contract placing Coastal in default.*

"Time is of the essence in any contract containing fixed dates for performance." *DeVito v. United States*, 188 Ct. Cl. 979, 991 (1969). When a contract contains fixed dates for performance, failure to perform within those deadlines is a condition of default. *Id.*; *see also Pinewood Realty Ltd. Partnership v. United States*, 223 Ct. Cl. 98, 103 (1980). When a contractual deadline elapses without performance, the party awaiting performance must either declare default within a reasonable time or issue a cure notice "setting as reasonable but specific time for performance on pain of default termination." *DeVito*, 188 Ct. Cl. at 991–92.

Under the General Terms of Sale, tender of the full purchase price on the closing date—October 23, 2016—was required to consummate the sale:

### 15. TENDER OF PAYMENT AND DELIVERY OF INSTRUMENT OF CONVEYANCE

The closing date of the sale (the "**Closing Date**") will be set by the Government and will be **forty-five (45)** calendar days after the acceptance of the Bid.

. . .

On the closing date, the Purchaser shall tender to the Government (or to the Escrow Holder) the balance of the Purchase Price in the form of a cashier's check, certified check, or electronic wire transfer. Upon confirmation that Purchaser's wire transferred funds have been received by the Government or that Purchaser's funds by check have been confirmed to the satisfaction of the Government, the Government shall deliver to the Purchaser the instrument, or instruments, of conveyance.

(IFB at Appx13). The GSA reserved its rights both "to extend the closing date for a reasonable amount of time" and to "refuse a Purchaser's request for extension of closing." (*Id.*). The GSA also reserved the right to "impose additional terms and conditions to grant an extension[,]" such as setting a specific time for payment on the closing date. (*Id.* at Appx14).

The GSA wielded both of these rights in its attempts to consummate the sale, exercising the former in granting three extensions at the request of Coastal Park for specifically identified reasons. (Pl. Mot. Ex. 11). The fourth extension was granted not pursuant to a request, but upon written notice to Coastal that the GSA had not received the balance of the purchase price. (Pl. Mot. Ex. 12). In this notice issued on November 7, 2016, the third-modified closing date, the GSA warned that the remaining balance must be paid by November 9, 2016 at 11:00 AM, "otherwise a finding of default of [sic] the contract will be determined." (*Id.*).

Rather than attempt to comply with the conditions of this forth extension, Coastal "rejected" the United States' final attempt to accept performance under the contract. (Pl. Mot.

Ex. 16, ECF No. 33-16). Consequently, the GSA then exercised its right to deny further extensions, and on November 10, 2016, notified Coastal it had "failed to consummate the transaction" and was "in default" regarding its performance obligations. (Pl. Mot. Ex. 11 at 2).

Payment was due on the "Closing Date," and although this date was modified several times, failure to tender payment in full amounted to a default by Coastal Park. Because the GSA was contractually entitled to payment in full on the closing date, its November 7, 2016 notice of extension and demand for payment in full did not constitute repudiation. The final extension gave Coastal until 11:00 AM on November 9, 2016 to tender payment. When it did not comply, the GSA was entitled to declare Coastal in default and pursue contractual remedies.

### b. *Coastal's default triggered the United States' right to choose a contractual remedy to mitigate damages, including retention of Earnest Money.*

In the event of default, the United States is required to take "reasonable efforts" to mitigate its damages. *Robinson v. United States*, 305 F.3d 1330, 1334 (Fed. Cir. 2002). "[R]elative costs in time and money are primary factors to consider in assessing reasonableness." *Id*. Under the General Terms of Sale, the GSA could retain Coastal's Earnest Money deposits to mitigate damages in four circumstances:

### 9. REVOCATION OF BID AND DEFAULT

…

(1) revocation of a bid after the conclusion of the bid opening, but prior to acceptance of the high bid by the Government, or (2) in the event of revocation of a bid after notice of acceptance, or **(3) in the event of any default** by the Purchaser in the performance of the contract of sale created by such acceptance, or **(4) in the event of failure by the Purchaser to consummate the transaction, the Purchaser agrees that any Earnest Money and all deposits paid to the Government** in any acceptable form, including credit card, together with any payments subsequently made on account, **are subject to forfeit** by the Purchaser to the Government **at the option of the Government** as damages for breach of contract, in which event the Purchaser shall be relieved from further liability.

(IFB at Appx11–12) (emphasis added). Granting an extension to delay the closing also triggered several contractual rights and privileges under Paragraph 16:

### 16. DELAYED CLOSING

[I]f the Government grants an extension, the Purchaser *may* be required to pay either: (i) a liquidated damages assessment of $1,000.00 per day; or (ii) interest on the outstanding balance of the Purchase Price, whichever is greater.

…

The Government may impose additional terms and conditions to grant an extension.

(*Id*. at Appx13) (emphasis added).

"We must interpret the contract in a manner that gives meaning to all of its provisions and makes sense." *McAbee Const. Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (citing *Hughes Communications Galaxy, Inc. v. United States,* 998 F.2d 953, 958 (Fed.Cir.1993)). A harmonious reading of the permissive language in these provisions provides the GSA with a choice of remedies if Coastal failed to consummate the sale by November 9, 2016, the final closing date. Under Paragraph 16, the GSA had the option to impose daily penalties and further extend the closing date. Under Paragraph 9, the GSA was entitled to declare the deposit forfeited, relieve Coastal from further liability, and pursue another purchaser. Nothing in the contract mandated that the GSA choose one provision over the other.

The United States argues that Coastal had demonstrated an apparent inability to obtain the financing necessary to tender payment and had demanded extra-contractual reductions in the accepted bid price. (Def. Mot. at 15). The Court sees no need to assess the veracity of these concerns or whether they independently constituted breach of the contract. It is enough that the GSA had no confidence in Coastal's ability to consummate the transaction should another extension be granted.

Therefore, once Coastal failed to tender payment on November 9, 2016, the GSA's election to declare Coastal in default, retain deposited Earnest Money as damages, and pursue resale of the property was reasonable.

## IV.    Conclusion

Coastal Park's failure to tender payment in full on the closing date amounted to default on its contract with the GSA for purchase of Coast Guard property. The United States did not repudiate the contract by sending Coastal a notice to cure by November 9, 2016 at 11:00 AM. Under the contract, the United States was entitled to retain Coastal's deposits of Earnest Money and resell the property to mitigate its damages once this final deadline elapsed without performance by Coastal.

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment is **DENIED**. The United States' Cross-Motion for Summary Judgement is **GRANTED**. Plaintiffs' claim for attorney's fees is **DISMISSED** as moot. The clerk is directed to enter judgment for the United States in accordance with RCFC 58.

**IT IS SO ORDERED.**

s/   David A. Tapp
DAVID A. TAPP, Judge